UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES E. SCHAUB,

    Petitioner,

                                                 Case Number: 05-74940
                                                 Honorable Marianne O. Battani
                                                 Magistrate Judge Donald A. Scheer

v.

KENNETH MCKEE,

    Respondent.

_____/

## OPINION AND ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

**I. Introduction**

     The petitioner, Charles E. Schaub, was a state prisoner, confined at Bellamy Creek Correctional Facility in Ionia, Michigan at the time he filed his *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, asserting that he was in custody in violation of his constitutional rights. However, the petitioner was discharged from custody on January 5, 2008. Despite the petitioner's release, this Court is not divested of jurisdiction to review the petitioner's habeas matter. *Lopez v. Heinaur,* 332 F. 3d 507, 510 (8th Cir. 2003).

     The petitioner was convicted of conspiracy to commit arson, Mich. Comp. Law § 750.157a(a) and Mich. Comp. Law § 750.73, on February 16, 2001 following a jury trial in Clare County, Michigan circuit court. He was sentenced on April 2, 2001, to five to twenty years'

imprisonment as an habitual offender, third offense, Mich. Comp. Law §769.11[1]. The petitioner raises two claims for habeas review: (1) ineffective assistance of trial counsel as a result of her conflict-of-interest; and (2) ineffective assistance of appellate counsel due to her failure to properly raise the conflict-of-interest issue on appeal as well as other meritorious claims. The respondent has filed an answer to the petition asserting that habeas relief should be denied because the petitioner has not only failed to demonstrate how he was prejudiced by his trial or appellate counsel, but has waived these claims for habeas review. The Court finds that the petitioner is not entitled to habeas relief; and therefore the petition will be denied.

## II. Factual Background

### A. The Fire

The conviction in this case arises from the alleged arson of the Garfield Township Fire Hall in Clare County. The petitioner and his brother, Randolph Schaub, were building contractors who were contracted to renovate the fire hall and construct an addition. There was conflict between the petitioner and Fire Chief Mike Erwin regarding the progression of the renovation project. During the early morning hours of August 6, 1999, a fire was started at the fire hall. Both the original structure and the structural addition were destroyed. The investigation led to the petitioner and his brother as being the prime suspects for setting the fire.

### B. Conflict-of-Interest

The petitioner asserts that he received ineffective assistance of counsel because his criminal defense attorney had a conflict-of-interest. The record supports the following facts. On March 3,

---

[1] The petitioner was tried jointly on the same offenses with his brother Randolph Schaub, who was sentenced to four years eight months to fifteen years' imprisonment.

2000, Tara S. Hovey, from the Law Offices of Dreyer & Hovey, was appointed to defend the petitioner during his criminal trial. Pet. at 1. Ms. Hovey's law partner, David Dreyer, represented the petitioner in two different and unrelated civil matters between 1999 and 2000, involving property in Garfield Township, prior to the arson and related conspiracy charges being filed relative to this matter. Pet. App. B, Ex. F at 4, 7. When the petitioner was initially charged, he was first interviewed by Mr. Dreyer because Ms. Hovey was unavailable. Pet. at 1; Pet. App. B, Ex. J at 4. Aside from the initial meeting with Mr. Dreyer and an occasional question that the petitioner may have needed answered when Ms. Hovey was not available, which was answered by Mr. Dreyer, Ms. Hovey was the only attorney representing the petitioner's interest in the criminal trial. Pet. App. A, Ex. K at 11. Garfield Township, at the time, was a "standing client" of the Dreyer & Hovey law firm. Pet. App. B, Ex. F at 4.

Although the petitioner was originally charged with three counts of arson and three counts of conspiracy to commit arson, he was only convicted of one count of conspiracy to commit arson. Pet. App. A, Ex. K at 3. Following the petitioner's conviction, a lawsuit was instituted against him by the insurance carrier for Garfield Township in an effort to obtain reimbursement, contribution and/or indemnification for any anticipated disbursement of funds and/or monies already paid out to cover the loss of the Garfield Township Fire Hall. *Id.* A default judgment had been entered against the petitioner, and he sought legal representation from the Dreyer & Hovey law firm in order to assist him in the civil matter. *Id.* After being retained to represent the petitioner, a breakdown in the relationship between the petitioner and Mr. Dreyer occurred, causing Mr. Dreyer to file a motion to withdraw as the petitioner's legal counsel. Pet. App., B, Ex. F. The collapse of their relationship stemmed from a legal theory the petitioner wanted Mr. Dreyer to pursue on his behalf. The

petitioner wanted Mr. Dreyer to argue that Garfield Township was involved in insurance fraud relative to the fire that occurred at the fire hall. Pet. App. A, Ex. K at 3. Because of Dreyer & Hovey's relationship with Garfield Township, Mr. Dreyer viewed the petitioner's legal theory as one that would generate a conflict of interest. Accordingly, the withdrawal motion was filed, argued and granted. Pet. App. B, Ex. F.

### III. Procedural History

Following his conviction and sentencing, the petitioner, through counsel, filed a direct appeal in the Michigan Court of Appeals and made arguments regarding: (1) the great weight of the evidence; (2) insufficient evidence; (3) trial court error in not ordering a mistrial; (4) ineffective assistance of counsel when the attorney waived an issue regarding the jury's request for a copy of the petitioner's trial transcript testimony; and (5) improper sentencing when the trial court departed from the sentencing guidelines. The Michigan Court of Appeals affirmed the petitioner's convictions on April 10, 2003. *People v. Schaub,* 2003 WL 1861027 (Mich. Ct. App. April 10, 2003). Following the state appellate court's decision, the petitioner filed a delayed application for leave to appeal in the Michigan Supreme Court raising the same issues presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Schaub,* 469 Mich. 865, 666 N.W.2d 673 (July 28, 2003) (Table). Subsequently, the petitioner filed a motion for reconsideration, which was also denied. *People v. Schaub,* 469 Mich. 865, 671 N.W.2d 51 (Oct. 31, 2003) (Table).

On September 17, 2003, the petitioner filed a petition for writ of habeas corpus with this Court raising the same two ineffective assistance of trial and appellate counsel issues that are presently before the Court. *Schaub v. Trombley,* No. 03-CV-73634, (E.D.Mich. June 28, 2004)

(Cleland, J.). The petition was dismissed without prejudice on exhaustion grounds. *Id.* The petitioner returned to the trial court, and among the motions that were filed was a motion for relief from judgment, which was denied on July 27, 2004. He subsequently filed a motion for reconsideration which was also denied on August 5, 2004. The petitioner appealed the trial court decision to the Michigan Court of Appeals where his application for leave to appeal was denied in a standard order. *People v. Schaub,* No. 257293 (Mich. Ct. App. April 7, 2005). His application for leave to appeal along with multiple motions filed with the Michigan Supreme Court were also denied in a standard order. *People v. Schaub,* 474 Mich. 932, 706 N.W.2d 24 (Nov. 29, 2005) (Table).

The petitioner has now returned to this Court filing the *pro se* habeas petition presently for review. The respondent has filed an answer to the petition asserting that habeas relief should be denied because the petitioner has not only failed to demonstrate how he was prejudiced by his trial or appellate counsel, but has waived these claims for habeas review.

**IV. Standard of Review**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith,* 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant

to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. §2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins,* 539 U.S. at 520-21 (quoting *Williams v. Taylor,* 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. §2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); see also *West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases . . .

A state-court decision will also be contrary to this Court's clearly established

precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams,* 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of §2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law . . . Under §2254(d)(1)'s "unreasonable application" clause, then a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . Rather, that application must also be unreasonable.

*Id.* at 409, 410-11; see also *Davis v. Coyle,* 475 F.3d 761, 766 (6th Cir. 2007); *King v. Bobby,* 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell,* 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins,* 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

## V. Discussion

### A. Conflict-of-Interest

#### 1. Waiver

The first points of contention in this matter are when the petitioner knew that Garfield Township was a client of the Dreyer & Hovey law firm and whether the petitioner waived any potential conflict-of-interest that may have arisen from Ms. Hovey's legal representation of the petitioner during his criminal trial. The petitioner claims that he had no knowledge that Garfield

Township was a client of the Dreyer & Hovey law firm until after his criminal trial concluded and after he sought the firm's legal representation in the civil suit brought by Garfield Township's insurance carrier. Pet. at 2. Therefore, the petitioner maintains that he could not have and did not waive the conflict-of-interest issue in this case. However, aside from the petitioner's self-serving declarations within the text of his habeas petition and in an affidavit, there is no other evidence to support his claim. Pet. App. A, Ex. I. Conversely, the record does support that the petitioner had been well aware of the Dreyer & Hovey firm's relationship with Garfield Township since 1999 when Mr. Dreyer represented the petitioner in a civil action regarding restrictive covenants in Garfield Township. Pet. at 1; Pet. App. B, Ex. J at 2. In a letter written to the Michigan Attorney Grievance Commission by David Dreyer, he states in pertinent part:

> Charles Schaub was initially referred to David Dreyer as a potential client by the Garfield Township Supervisor, William Scott. In 1999, Charles Schaub received approval from Garfield Township (pursuant to the Michigan Land Division Act) to divide a five acre subdivision lot into four parcels. Subsequent to Garfield Township approving the lot division, some property owners in the subdivision retained an attorney and objected to an alleged violation of the restrictive covenants prohibiting land division for the lot in question. After meeting with Mr. Schaub and reviewing the case (including reviewing the written approval of the land division by Garfield Township) David Dreyer agreed to represent Mr. Schaub in a civil action regarding the restrictive covenants. Prior to accepting a retainer or filing a court case, David Dreyer consulted with Mr. Schaub, informed Mr. Schaub that David Dreyer was the Garfield Township attorney, and received confirmation from Mr. Schaub that there was no objection nor claim of conflict for the firm of Dreyer & Hovey to represent him in the civil case. Mr. Schaub was aware that Garfield Township was consulted by David Dreyer (prior to the acceptance of the civil case) and understood that the Garfield Township Supervisor had agreed to be a witness on behalf of Charles Schaub in the land division case. Similarly, prior to representing Mr. Schaub, David Dreyer consulted with Garfield Township and confirmed that Garfield Township waived any potential conflict of interest and that the Garfield Township Supervisor
>
> agreed to be a witness on behalf of Charles Schaub . . . At no point was any claim of conflict raised by Charles Schaub or Garfield Township in regard to the civil case.

Pet. App. B, Ex. J at 2-3. In a subsequent civil matter involving Garfield Township, the petitioner again enlisted the services of David Dreyer and he was again informed of Mr. Dreyer's relationship with the Township:

> Subsequently, Charles Schaub was the successful bidder to construct a fire hall for Garfield Township. The Firm of Dreyer & Hovey, was not involved in the bid process, contracts, or any other matters related to the fire hall project until an issue arose in regard to a claim of a subcontractor. In February 2000 David Dreyer was contracted simultaneously by Charles Schaub and by the Garfield Township Supervisor, regarding a claim filed by Midland Engine, Inc. At this point, David Dreyer again talked with Charles Schaub and the Garfield Township Supervisor to confirm that there was no conflict of interest in regard to this matter. Both Charles Schaub and the Garfield Township Supervisor confirmed that there was no conflict of interest and confirmed that they had no objection to David Dreyer representing both of them.

Pet. App. B, Ex. J at 3.

In a letter written to the Michigan Attorney Grievance Commission by Tara Hovey, she indicates that the petitioner was well aware of the fact that she worked with David Dreyer for the following reasons: (1) she would answer the petitioner's questions if he called the office, when Mr. Dreyer was not available, regarding his civil matters; (2) after her appointment as his criminal defense attorney, the petitioner's first interview was conducted by Mr. Dreyer on her behalf because of her unavailability; (3) on other occasions of Ms. Hovey's unavailability, the petitioner would pose his questions to Mr. Dreyer; (4) the letterhead on any correspondence sent to the petitioner clearly listed both the names of Mr. Dreyer and Ms. Hovey as well as the firm name; and (5) David Dreyer specifically told the petitioner during his initial meeting with him that Ms. Hovey was his partner in the firm. Pet. App. A, Ex. K at 6-7.

In an Opinion and Order by the trial court denying the petitioner's motion for relief from judgment, it states in pertinent part:

> Second, Defendant's allegation that trial counsel had a conflict of interest leading her to exclude evidence implicating others in the arson is not supported by credible evidence. Trial counsel in the presence of others disclosed the relationship prior to accepting appointment to the case and and obtained waivers from both the Township and the Defendant. Trial counsel further represented to the Grievance Commission that no actual conflict of interest existed since the Township had been fully compensated for arson losses by its insurance company.

Pet. App. D at 2.

In a letter from David Dreyer to the Garfield Township Supervisor and copied to the petitioner,[2] it states in pertinent part:

> My partner and I represent Charles Schaub in regard to various matters, including criminal charges that have been brought against him in regard to Garfield Township property. I am aware of no conflict of interest that would prevent us from representing Mr. Schaub. However, since, I am [a] Garfield Township attorney, I wanted to discuss that with you. Based upon my conversation, neither of us were aware of any conflict that would prevent our office from representing Mr. Schaub. Therefore, I plan to continue to represent him.

Pet. App. A, Ex. L

Finally, the petitioner is also pursuing an ineffective assistance of appellate counsel claim because his third appointed appellate counsel did not raise the conflict-of-interest issue on appeal to his satisfaction[3]. Martin Beres, the petitioner's first appellate attorney, set forth in pertinent part in a letter addressed to the petitioner the reason for his refusal to raise the conflict-of-interest issue in a supplemental brief to the application for leave to appeal that he had already prepared on the

---

[2]The petitioner claims that he received the letter dated March 17, 2000, but not until July 2002.

[3]The petitioner's first appellate counsel, Martin Beres, although he prepared an appellate brief for filing with the Michigan Court of Appeals, he refused to file a supplemental brief raising the conflict-of-interest issue stating that the claim lacked merit. He was permitted to withdraw from representing the petitioner. The petitioner's second appellate counsel, John D. Lazar, also withdrew as the petitioner's legal counsel citing geographic distance and lack of resources. Helen Nieuwenhuis was the petitioner's third appellate attorney.

petitioner's behalf:

> As I discussed in detail with you at our personal conference, I will not file any supplemental brief on the claimed conflict of interest issue, for the following reasons, based on a careful review of the record and trial transcripts, legal research and independent professional analysis:
>
> (1) You were well aware of the fact that Dr[e]yer & Hovey law firm represented Garfield Township prior to the criminal charges being instituted. Not only were you personally involved in bidding contracts with the township (most notably the one for the fire house expansion) but your father was a longtime employee of the township. Moreover, you had already retained Mr. Dr[e]yer to represent you in civil proceedings prior to Ms. Hovey being appointed to represent you in the criminal matter.
>
> (2) Even if you were somehow not aware of the Dr[e]yer & Hovey law firm's relationship with Garfield Township prior to your criminal charges, you were immediately advised of the relationship by Ms. Hovey, and this was discussed at length with you by both Mr Dr[e]yer and Ms. Hovey. Prior to your preliminary examination Mr. Dr[e]yer communicated with Mr. Scott, Township Supervisor, regarding any potential conflict of interest, and you were sent a copy of a follow up letter dated March 17, 2000, clearly disclosing the relationship that there was no conflict of interest.
>
> (3) There was full disclosure and you had actual knowledge of the relationship between Dr[e]yer & Hovey and Garfield Township. Based on this information, if you believed that there was any potential for conflict of interest, you were obligated to seek other counsel. Rather than do that, you in fact retained the firm to represent you in the criminal matter and they continued to represent you in the civil matter to this date. You obviously believed that the representation [ ] by the Dr[e]yer & Hovey law firm would provide you [with a] tactical advantage in your criminal defense. The law does not permit one to "sandbag" a possible issue that was known at the trial level [and] then complain about it on appeal.

Pet. App. A, Ex. D at 1.

Waiver of the right to conflict-free counsel must be voluntary and "constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case upon the particular facts and circumstances surrounding that case including the background, experience and conduct of the accused." *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938).

"[T]he defendant must be aware of the conflict [of interest], realize the consequences to his defense that continuing with counsel under the onus of a conflict could have, and also be aware that he has the right to obtain other counsel . . . " *United States v. Levine,* 794 F.2d 1203, 1206 (7th Cir. 1986). "A defendant may waive any potential conflicts of interest and elect to continue with dual representation." *United States v. Hall,* 200 F.3d 962, 964 (6th Cir. 2000). Although, the trial court record is barren relative to the conflict-of-interest claim since the petitioner did not raise any objections to Ms. Hovey's representation during his criminal proceedings, that does not negate the overwhelming evidence that the petitioner knew about the potential conflict-of-interest issue and failed to raise any objections until after the conclusion of his criminal trial. The petitioner had enough information to execute a voluntary, knowing and intelligent waiver. See *Edwards v. Arizona,* 451 U.S. 477, 482 (1981); see also *United States v. Krebs,* 788 F.2d 1166, 1173 (6th Cir. 1986).

Accordingly, the Court finds that the petitioner waived his right to raise a conflict-of-interest claim in this matter. Habeas relief relative to this issue is therefore, denied.

### 2. Ineffective Assistance of Trial Counsel

Even if the Court did not find that the petitioner waived the conflict-of-interest issue for habeas review, habeas relief would still be denied as the Court does not find that an actual conflict-of-interest, or adverse legal representation existed at trial. A criminal defendant is entitled to the effective assistance of counsel free from conflict. See *Holloway v. Arkansas,* 435 U.S. 475, 483-84 (1978). It is well settled that when there is a multiple, concurrent or joint representation conflict that is at issue, the applicable legal standard is not the traditional ineffective assistance of counsel standard set forth in *Strickland v. Washington,* 466 U.S. 668 (1984), which requires a showing of deficient performance and prejudice (i.e., reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different); rather, it is the petitioner-favorable standard set forth in *Cuyler v. Sullivan,* 446 U.S. 335 (1980), under which prejudice is presumed and the petitioner need only show that there was an actual conflict that adversely affected his counsel's performance.

Therefore, the first issue that must be resolved is whether the *Cuyler* or the *Strickland* standard governs the conflict at issue in this case. It is the petitioner's position that Garfield Township is a standing client of the Dreyer & Hovey law firm; and Garfield Township owns the property for which the petitioner was on trial for damaging by conspiring to and committing arson. Ms. Hovey, as a partner of the Dreyer & Hovey law firm, also represents Garfield Township. The petitioner contends that it was a conflict-of-interest for Ms. Hovey to concurrently represent Garfield Township and the petitioner when one client (the petitioner) was being accused of destroying the property of another client (Garfield Township). The case law on the issue of which standard to apply is clouded when the trial court was not informed and there was no objection on the record regarding any potential conflict[4], but the Court concludes that the *Cuyler* standard is applicable in this case.

---

[4]*MacFarland v. Yukins,* 356 F.3d 688 (6th Cir. 2004) (common attorney representation of two criminal defendants in two separate trials, arising from the same criminal activity - *Cuyler* standard); *Smith v. Hofbauer,* 312 F.3d 809 (6th Cir.2003) (defense attorney facing criminal charges in the same county in which he was defending a client - *Strickland* standard); *Rugiero v. United States,* 330 F.Supp.2d 900 (E.D. Mich. 2004)(defendant's attorney was under criminal investigation by the federal government during his client's federal pre-trial and trial proceedings in an unrelated case - *Cuyler* standard); *Mickens v. Taylor,* 535 U.S. 162 (2002) (defendant's attorney previously represented the murder victim in a juvenile court proceeding - *Strickland* standard); *Harris v. Carter,* 337 F.3d 758 (6th Cir. 2003)(one attorney representing two criminal defendants in a joint trial arising out of a drive-by shooting incident - *Cuyler* standard); *Riggs v. United States,* 209 F.3d 828, 831 (6th Cir. 2000) ("This Circuit applies the *Cuyler* analysis to **all** Sixth Amendment conflict-of-interest claims. One exception, not applicable here, is in those cases where the trial court was informed by counsel or the defendant of a potential conflict of interest but failed to inquire into that conflict: in such cases prejudice is presumed and reversal is automatic." (emphasis added) - *Cuyler* standard); *Regelin v. Jackson,* 2006 WL 467905 (E.D.

The Sixth Circuit does not appear to have addressed a situation involving a "standing client" having a potential conflict of interest with another client, both of whom are represented by the same attorney. *Cuyler* and its progeny have interpreted joint, and therefore concurrent, representation as coming within the *Cuyler* standard. However, the "standing client" situation comes within the realm of representation that is concurrent in a conflict-of-interest scenario, but not necessarily joint. Even though, the record suggests that Garfield Township would not have benefitted from the petitioner's conviction, since the insurance company allegedly paid for the damages to the fire hall, nor would the Township be harmed by the Dreyer & Hovey firm's representation of both the petitioner and the Township, the fact remains that not only was Garfield Township a victim of the petitioner's alleged criminal conduct, the Garfield Township Supervisor named the petitioner as a suspect in the arson of the fire hall.[5] Moreover, the record indicates that whenever the petitioner was being newly represented by Mr. Dreyer or Ms. Hovey regarding a new civil or criminal matter, and Garfield Township was somehow involved, Dreyer and/or Hovey state that they reminded the petitioner each time that Garfield Township was their client and discussed the conflict-of-interest issue. Therefore, absent contrary binding authority, the *Cuyler* standard applies to "standing client" conflict-of-interest issues, which requires a showing of actual conflict and an adverse affect upon the attorney's performance.

        a. <u>Actual Conflict</u>

In order to show actual conflict, a habeas petitioner must point to "specific instances in the

---

Mich. Feb. 24, 2006)(the petitioner's attorney had represented in previous unrelated matters an unindicted co-conspirator in the petitioner's case - *Cuyler* standard).

    [5]The Garfield Township Supervisor and the petitioner had a contentious relationship while the petitioner was working on the renovations to the fire hall.

record to suggest an actual conflict or impairment of his interests." See *Thomas v. Foltz,* 818 F.2d 476, 481 (6th Cir. 1987). A petitioner must "make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." *Id.* In support of the petitioner's actual conflict argument, he claims that Ms. Hovey's cross-examination of one of the prosecution's key witnesses, Katherine Williams,[6] was not aggressive enough and did not convincingly attack her credibility, as this witness' statements against the petitioner were not consistent through her preliminary examination, deposition and trial proceedings. He also claims that Ms. Hovey failed to investigate witnesses to establish facts supporting an insurance fraud theory, with Garfield Township fire personnel being the individuals implicated in the fraud. The petitioner asserts that Ms. Hovey's establishment of such an alternative theory of responsibility (i.e., insurance fraud) in favor of the petitioner, would compromise the interests of her other client, Garfield Township, thus creating the conflict-of-interest.

Upon the Court's review of the record, it is evident that the facts do not support the petitioner's actual conflict argument for four reasons. First, Ms. Hovey called the petitioner to testify on his own behalf, providing him with the opportunity to fully defend himself and to espouse his insurance fraud theory, which he did not do. Tr. Vol.V, 2/13/01 at 115-167. Second, Ms. Hovey called a total of seven defense witnesses in an effort to secure an acquittal for the petitioner. Tr. Vol.V, 2/13/01 at 106-113; Tr. Vol. VI, 2/14/01 at 7-10, 11-14, 16, 18-38, 39-54, 57. Third, Katherine Williams, along with all of the prosecutor's witnesses were vigorously examined by Ms.

---

[6]Ms. Williams testified in part that she overheard the petitioner and his brother, Randolph Schaub, planning the arson of the fire hall.

Hovey. *Id.;* Tr. Vol.V, 2/13/01 at 49-75, 89, 94-106. Finally, Ms. Hovey made legally appropriate objections throughout the criminal proceedings and filed pre-trial and post-trial motions on the petitioner's behalf. Although the petitioner makes the argument that Ms. Hovey chose not to investigate witnesses that would have benefitted his case in order to protect Garfield Township from fraud charges, the record does not support the petitioner's position.

### b. Adverse Affects

The petitioner likewise cannot show that Ms. Hovey's representation was adversely affected by the purported conflict-of-interest. The petitioner was initially charged with three counts of arson and three counts of conspiracy to commit arson. Ultimately, the petitioner was convicted of only one count of conspiracy to commit arson. This outcome does not correlate with a conflict-of-interest that adversely affected Ms. Hovey's legal representation. He was sentenced to five to twenty years and served just under seven years of that prison term until his release on January 5, 2008. Therefore, the Court does not find that Ms. Hovey's legal representation was adversely affected. Accordingly, although the *Cuyler* standard is more petitioner friendly than the *Strickland* standard in terms of establishing a legitimate conflict-of-interest, the petitioner in this case has not met the *Cuyler* standard due to his failure to show an actual conflict of interest and his inability to demonstrate how Ms. Hovey's representation was adversely affected. Thus, even if the conflict-of-interest issue had not been waived, habeas relief remains unwarranted on this claim.

### B. Ineffective Assistance of Appellate Counsel

The petitioner asserts that his third appellate attorney, Helen Nieuwenhuis, failed to properly

raise the conflict-of-interest issue which led to the petitioner's ineffective assistance of trial counsel. He also asserts that Ms. Nieuwenhuis failed to raise meritorious issues on appeal. For claims of ineffective assistance of appellate counsel, the petitioner must show that appellate counsel failed to raise an issue which was reasonably probable to have changed the result on appeal. *Smith v. Robbins,* 528 U.S. 259, 285-86 (2000); *Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001). Appellate counsel cannot be ineffective for failing to raise an issue that lacks merit. *Greer,* 264 F.3d at 676. As for the petitioner's first claim, Ms. Nieuwenhuis did raise the conflict-of-interest issue in the Michigan Court of Appeals, but did not do so to the petitioner's satisfaction. For the reasons discussed above, the petitioner's conflict-of-interest claim has no merit. Therefore, even if Ms. Nieuwenhuis failed to raise the issue at all, habeas relief would still not be warranted. The petitioner's other claim is vague, overbroad and ambiguous. Simply asserting that appellate counsel failed to raise other meritorious claims without specifically identifying those claims and demonstrating their merit is insufficient to sustain an ineffective assistance of appellate counsel claim. Therefore, under *Greer*, habeas relief is denied on this issue.

## VI. Conclusion

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, the Court concludes that the petitioner has not established that he was in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dk.# 1] is **DENIED.**

s/Marianne O. Battani
HONORABLE MARIANNE O. BATTANI
UNITED STATES DISTRICT COURT

Dated: May 30, 2008

CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this opinion and order was served upon all parties of record.

s/Bernadette M. Thebolt